UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| KEVIN M. THOMPSON, | No. ED CV 09-413-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on March 4, 2009, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on March 27, 2009, and March 28, 2009.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on September 21, 2009, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on December 28, 1960. [Administrative Record ("AR") at 76, 332.] He has a twelfth grade education. [AR at 100, 323, 379.] Plaintiff previously worked as a custodian, jewelry repairer, and bus driver. [AR at 95, 324, 362.]

On August 26, 2002, plaintiff protectively filed applications for Disability Insurance Benefits and Supplemental Security Income payments, in which he alleged he has been unable to work since December 15, 2001, due to depression, a sleep disorder, and anxiety attacks. [AR at 76-80, 93-102.] After his applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 28, 30-35.] A hearing was held on June 29, 2004, at which plaintiff appeared with counsel and testified on his own behalf. A vocational expert ("VE") also testified. [AR at 218-41.] The ALJ determined that plaintiff was not disabled. [AR at 10-18.] Plaintiff requested review of the hearing decision. [AR at 9.] The Appeals Council denied review on August 8, 2005. [AR at 5-8.] Plaintiff then filed an action in District Court, Case No. ED CV 05-930-PLA, challenging the Commissioner's decision. On November 2, 2006, the Court remanded the matter for further proceedings, concluding that the ALJ failed to properly address the medical opinion evidence, including the nonexamining physicians' residual functional capacity assessment and the findings of Dr. Richard Hicks, a consultative examining psychiatrist. [AR at 270-80.] On January 6, 2007, the Appeals Council remanded the case for further proceedings. [AR at 267-69.] A second hearing was held on October 3, 2007, at which plaintiff appeared with counsel and testified on his own behalf. A VE also testified. [AR at 386-403.] The ALJ again determined that plaintiff was not disabled. [AR at 254-66.] Plaintiff requested review of the second hearing decision. [AR at 293.] On May 3, 2008, the Appeals Council remanded the case again, finding that the second ALJ also failed to properly address the nonexamining physicians' and Dr. Hicks' findings concerning plaintiff's limitations. [AR at 295-99.] A third administrative hearing was held on September 18, 2008, at which plaintiff appeared with counsel and testified on his own behalf. A medical expert and VE also testified. [AR at 346-85.] On November 4, 2008, the ALJ determined that plaintiff was not disabled. [AR

at 242-53.] On approximately January 4, 2008, the ALJ's most recent decision became the final decision of the Commissioner. [Joint Stipulation ("JS") at 3.] This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

/

/

## A. THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

/
/
/
/
/

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. [AR at 246.][1]  At step two, the ALJ concluded that plaintiff has the severe impairments of mood and personality disorders, not otherwise specified. [Id.]  At step three, the ALJ found that the impairments do not meet or equal any impairments in the Listings. [AR at 247-49.]  The ALJ further determined that plaintiff retains the residual functional capacity ("RFC") to perform "a full range of work at all exertional levels but with the following nonexertional limitations: simple, repetitive tasks, entry-level work, and working with things rather than people." [AR at 249-51.]  At step four, the ALJ concluded that plaintiff is unable to perform his past relevant work. [AR at 251.]  At step five, the ALJ concluded that there are a significant number of jobs in the local and national economies that he can perform. [AR at 251-52.]  Accordingly, the ALJ found plaintiff not disabled. [AR at 252.]

## V.

## **THE ALJ'S DECISION**

Plaintiff raises the following contentions: (1) the ALJ failed to properly consider all of the medical evidence in the record; (2) the ALJ improperly rejected plaintiff's subjective complaints; and (3) the ALJ failed to consider all of the vocational evidence. [JS at 4-8, 12-14, 18-20.]  For the reasons discussed below, the Court agrees that the ALJ's consideration of the evidence was flawed, and remands this matter for further proceedings.

**A.     CONSIDERATION OF THE MEDICAL EVIDENCE**

Plaintiff asserts that the ALJ has again failed to properly consider the medical evidence. Specifically, he asserts that the ALJ did not properly consider Dr. Hicks' finding that plaintiff's "consistency and regularity would be somewhat unpredictable" [JS at 7-8; AR at 134]; Dr.

---

[1] The ALJ also determined that plaintiff is insured for Disability Insurance Benefits purposes through March 31, 2007. [AR at 246.]

Funkenstein's findings that plaintiff would miss work more than three times each month due in part to his extreme limitations "maintaining concentration, persistence, or pace" [JS at 7; AR at 161]; or the state physicians' findings that plaintiff has a variety of moderate mental limitations that impact his "ability to complete a normal work day and work week without interruptions from psychologically based symptoms." [JS at 8; AR at 151.] As explained below, the Court finds that the ALJ failed to properly consider the medical evidence by failing to resolve an ambiguity in that evidence regarding the extent of plaintiff's mental limitations.[2]

### 1. **Dr. Hicks' Findings**

Dr. Richard Hicks, a consultative psychiatrist, conducted a comprehensive psychiatric evaluation of plaintiff on November 21, 2002. [AR at 130-34.] Dr. Hicks diagnosed plaintiff with long-standing depressive illness with suicidal thoughts, tendencies, and attempts. [AR at 133.] After conducting a battery of psychiatric tests, Dr. Hicks concluded that plaintiff is capable of performing simple and repetitive tasks, accepting simple instructions from supervisors, and interacting to some degree with coworkers and the public. However, he found that plaintiff's "consistency and regularity would be somewhat unpredictable." [AR at 134.] Dr. Hicks recommended more vigorous psychiatric treatment but noted that due to plaintiff's lack of insurance, "it is difficult to say how he is going to obtain" the necessary treatment. [Id.]

If there are ambiguities or inadequacies in the record concerning medical treatment or diagnoses that may affect the determination of disability, the ALJ has a duty to further develop the record. See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the

---

[2] In arguing that the ALJ improperly considered the medical evidence, plaintiff focuses on the findings of Dr. Hicks, the state agency physicians, and Dr. Funkenstein. [JS at 4-8.] As explained herein, the Court finds that remand is necessary to reconsider these parts of the medical evidence irrespective of the additional medical evidence on which the ALJ relied to assess plaintiff's credibility and RFC. Thus, the Court will not provide a detailed review of the remaining medical evidence, including, among other records, a second psychiatric evaluation conducted by examining psychiatrist Dr. H. Douglas Engelhorn on April 9, 2003 [AR at 154-57], a psychological evaluation conducted by Dr. Harrell Reznick on May 24, 2007 [AR at 320-28], and the testimony of Dr. David Glassmire, a non-examining medical expert. [AR at 362-66.]

evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'") (quoting Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)). When medical records are inadequate to determine whether a claimant is disabled, the ALJ must recontact the medical source, including the treating physician if necessary, to clarify the ambiguity or to obtain additional information pertaining to the claimant's medical condition. See 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) ("We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques."). The responsibility to see that this duty is fulfilled belongs entirely to the ALJ; it is not part of the claimant's burden. See White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001).

     This Court and the Appeals Council have previously remanded plaintiff's actions and explicitly instructed the ALJ to further consider and, if necessary, clarify Dr. Hicks' finding that plaintiff's "consistency and regularity would be somewhat unpredictable." [AR at 134, 278 (fn. 8), 298.] Yet, in the third decision, the ALJ has still failed to adequately address that finding. Significantly, in its most recent order of remand, the Appeals Council instructed the ALJ, as appropriate, to request additional evidence and "further clarification of the opinions and medical source statements about what [plaintiff] can still do despite the impairment," in order to properly consider Dr. Hicks' evaluation. [AR at 298.] In the third decision, the ALJ acknowledged that Dr. Hicks' findings were at least partially ambiguous by stating, "Dr. Hick's [sic] finding of [plaintiff] likely being unreliable in terms of 'consistency and regularity' . . . [is] unexplained." [AR at 250.] However, despite this recognition by the ALJ, there is no indication in the record that the ALJ satisfied his duty to clarify the ambiguity. Rather than obtaining additional information from Dr. Hicks, the ALJ merely concluded that there is "no indication that Dr. Hicks felt [plaintiff] could not work on a sustained full time basis." [Id.] This is clearly insufficient in light of the remand orders.

     By not recontacting Dr. Hicks for clarification, the ALJ failed to fulfill his duty to develop the record and resolve ambiguities in the medical evidence. Tonapetyan, 242 F.3d at 1150; 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1). A clarification from Dr. Hicks concerning his statement that

plaintiff would be unpredictable in his regularity and consistency could well impact the disability determination. Indeed, the VE's testimony indicated that if plaintiff has irregular and inconsistent work attendance, he likely would be precluded from substantial gainful employment. [AR at 384.] As such, remand is warranted to recontact Dr. Hicks in order to clarify his findings that plaintiff's regularity and consistency would be unpredictable.

### 2. **The State Agency Physicians' Findings**

The record also contains a Mental Residual Functional Capacity Assessment ("MRFCA") completed by non-examining state agency physicians on December 4, 2002. [AR at 150-53.] The portion of the assessment titled "Summary Conclusions" is comprised of different categories of mental activities relevant to plaintiff's "capacity to sustain [those] activit[ies] over a normal workday and workweek, on an ongoing basis." [AR at 150-51.] The state agency physicians found that plaintiff has moderate limitations in understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods; performing activities within a schedule; maintaining regular attendance; being punctual within customary tolerances; working in coordination with or proximity to others without being distracted by them; completing a normal workday and workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the general public; and responding appropriately to changes in the work setting. [Id.] In the final section of the MRFCA titled "Functional Capacity Assessment," the following ink-stamped message is set forth: "can sustain simple repetitive tasks with adequate pace and persistence. Can adapt and relate to coworkers and [supervisors]. Cannot work with public." [AR at 152.]

In the third decision, the ALJ addressed the state physicians' findings concerning plaintiff's various moderate limitations listed in the "Summary Conclusion" section of the MRFCA. While the ALJ acknowledged that the term "moderately" "is clearly broad and ill defined," he asserted that the term is intentionally vague because the limitations checked in the "Summary Conclusion" section are to be explained in more detail in the "Functional Capacity" section of the MRFCA. [AR at 250-51.] The ALJ found that the state physicians provided a detailed explanation of plaintiff's

various limitations in the Functional Capacity section, by using the ink-stamped message quoted herein. [AR at 152.] Plaintiff challenges the sufficiency of the stamped statement and suggests that the ALJ erred in concluding that the statement was a "more reliable and more accurate" assessment of plaintiff's RFC "than the 20 separate and distinct work related abilities that were each separately assessed by the same doctor under" the Summary Conclusions part of the MRFCA. [JS at 20.]

Although the Court agrees with the ALJ that, according to the MRFCA instructions, plaintiff's limitations identified in the Summary Conclusion section were to be explained in more detail in the Functional Capacity section of the form [see AR at 150], the Court need not resolve whether the stamped statement was sufficiently detailed to be a more accurate description of plaintiff's RFC than other information provided in the MRFCA. The ALJ found that the state physicians' findings concerning plaintiff's limitations were "clear[ly] . . . based on Dr. Hick's [sic] finding of [plaintiff] likely being unreliable in terms of 'consistency and regularity.'" [AR at 250.] Since the ALJ determined that the state physicians' findings are at least partially dependant on Dr. Hicks' evaluation, the ALJ is ordered to reconsider the state physicians' findings once Dr. Hicks' evaluation is properly clarified.

### 3. Dr. Funkenstein's Findings

On February 11, 2003, a Psychiatric Review Form ("PRF") was completed by a licensed clinical social worker and signed off by Dr. Dan Funkenstein, who had treated plaintiff on and off since 1999. [AR at 159-62.] According to the PRF, plaintiff has moderate limitations with respect to activities of daily living, marked difficulties with respect to maintaining social functioning, and extreme difficulties with respect to maintaining concentration, persistence, or pace. [AR at 162.] According to the PRF, plaintiff suffers from chronic dysthymic mood, panic attacks, an inability to cope with interpersonal stress, and poor memory and concentration, which would make it difficult for him to sustain regular employment. [AR at 160-61.]

The ALJ explicitly rejected Dr. Funkenstein's findings, as he determined that they were anomalous compared to the rest of the medical evidence, unsupported by clinical findings, internally inconsistent, and formulaic. [AR at 247-48.] As the ALJ rejected Dr. Funkenstein's

findings based in part on the ALJ's analysis of the medical evidence, the PRF should be reconsidered on remand once the medical evidence is properly developed.

**B.    PLAINTIFF'S CREDIBILITY**

Plaintiff argues that the ALJ erred in finding him incredible. [JS at 12-14.] Whenever an ALJ discredits a claimant's testimony regarding subjective symptoms, including functional limitations, the ALJ must make explicit credibility findings. See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993) (if the ALJ does not accept a claimant's testimony, he must make specific findings rejecting it). The factors to be considered in weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c). "It is not sufficient for the ALJ to make only general findings." Dodrill, 12 F.3d at 918. Absent evidence showing that a plaintiff is malingering,[3] the ALJ must clearly identify evidence in the record undermining the plaintiff's testimony to properly discredit his alleged limitations. See id.; see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") (quoting Lester, 81 F.3d at 834). If properly supported, the ALJ's credibility determination is entitled to "great deference." See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

In the third decision, despite finding that plaintiff's impairments could reasonably produce his symptoms, the ALJ nonetheless found that plaintiff's claims regarding the "intensity, persistence and limiting effects of [his] symptoms are not credible to the extent they are

---

[3] Although there was evidence that plaintiff may have malingered during a memory assessment conducted by Dr. Reznick [AR at 325-26], the ALJ did not explicitly rely on this finding in assessing plaintiff's credibility.

inconsistent with the [ALJ's] residual functional capacity assessment." [AR at 249.] The ALJ also found plaintiff incredible due to evidence that he failed to seek regular treatment, was working part time, and his parents were not in touch with him at the time of the third hearing. [AR at 249-51.] Since the ALJ found plaintiff incredible based in part on the ALJ's analysis of the medical evidence, including Dr. Hicks' ambiguous findings, plaintiff's credibility should be reassessed once the medical evidence has been properly developed and considered.

Furthermore, the ALJ's remaining reasons for dismissing plaintiff's credibility were inadequate. First, since plaintiff suffers from mental impairments, his failure to seek treatment may be insufficient to find him incredible. The Ninth Circuit has "particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." Regennitter v. Commissioner, 166 F.3d 1294, 1299-1300 (9th Cir. 1999) (internal quotations omitted).

Secondly, the ALJ failed to adequately explain how plaintiff's part-time employment helping a disabled person a few hours each week undermined his credibility concerning his alleged limitations. When a plaintiff's daily activities consume a substantial part of his day and are rigorous enough to be transferable to a full-time work setting, those activities can constitute a basis for finding his alleged limitations incredible. Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). However, the ALJ did not find that plaintiff's ability to work a few hours each week is inconsistent with his claimed limitations or that his job would be transferable to a full-time work setting. See Fair, 885 F.2d at 603 (noting that a claimant is not required to be "utterly incapacitated" in order to be disabled). A plaintiff's attempt at working, as a basis for undermining credibility, is "especially unconvincing where," as is the case here, "the individual attempted to work only because of extreme economic necessity." Lingenfelter v. Astrue, 504 F.3d 1028, 1039 (9th Cir. 2007) (internal quotation marks omitted). Plaintiff testified that due to his mental impairments, it is difficult for him to work even a few hours each week, but that he has tried working part time to avoid homelessness. [AR at 359-60.] However, he testified that he is worried about losing his job as he has had difficulty controlling his temper and anxiety while at work. [AR at 360.] Since

plaintiff struggles to work even part time but does so in order to improve his "dire economic situation," "it is at least as likely that [he] tried to work in spite of his symptoms, not because they were less severe than alleged." Lingenfelter, 504 F.3d at 1039.

Lastly, the ALJ's conclusory assertion that plaintiff's strained relationship with his parents "suggests that they like the consultative medical examiners have not been impressed by his symptoms," is an inadequate basis for finding plaintiff incredible. [AR at 251.] The only evidence concerning plaintiff's relationship with his parents was his own testimony that his parents are not helping him financially because they "disconnected" him after an argument. [AR at 359.] Plaintiff further testified that "my family wants nothing to do with me anymore. . . because of . . . my anxiety attacks. They can't handle my temper and coming over [to their house] in the middle of the night." [AR at 376-77.] There is no evidence to support the ALJ's assumption that plaintiff's parents were unimpressed by or otherwise did not believe the extent of plaintiff's alleged mental limitations. To the contrary, plaintiff's testimony concerning his strained familial relationships supports his alleged difficulties interacting with other people and controlling his anxiety and mood. To properly reject a plaintiff's alleged limitations, the ALJ must provide reasons "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995). Since the ALJ's conclusory statement fails to adequately explain how plaintiff's relationships with his parents renders him incredible, the Court cannot find that the ALJ did not arbitrarily dismiss plaintiff's credibility on this basis. Remand is warranted to reconsider plaintiff's credibility.

**C.    VOCATIONAL EVIDENCE**

Plaintiff asserts that the ALJ also erred in considering the vocational evidence. [AR at 18-20.] At the third hearing, the ALJ elicited testimony from a vocational expert, who testified that if plaintiff had the mental RFC ultimately assigned by the ALJ -- that is, if he could perform repetitive, entry level work that is restricted to working with things rather than people -- he would be capable of performing jobs such as a hospital or industrial cleaner and a mail clerk. [AR at 383.] The VE's testimony was largely premised on the ALJ's evaluation of the medical evidence and plaintiff's

credibility. In turn, the formulation of plaintiff's RFC depended on the ALJ's credibility and medical evidence evaluations as well as on the VE's testimony. Since the Court finds that the ALJ's credibility and medical evidence evaluations were inadequate, remand is also warranted to reconsider the vocational evidence, and if necessary, to obtain additional VE testimony concerning plaintiff's ability to obtain substantial gainful employment, despite his mental impairments.

## VI.

## **REMAND IS APPROPRIATE**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F. 3d 1172, 1179 (9th Cir. 2000), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate for the ALJ to 1) recontact Dr. Hicks to clarify his findings regarding plaintiff's consistency and regularity, 2) reconsider the findings of the nonexamining state agency physicians and Dr. Funkenstein in light of the updated medical evidence, 3) reconsider plaintiff's credibility, 4) and reconsider the vocational evidence. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: November 9, 2009

                                           PAUL L. ABRAMS
                                 UNITED STATES MAGISTRATE JUDGE